# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DARRICK HUNDT, on behalf of himself and all other plaintiffs similarly situated, known and unknown, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 C 7238 |
| v. | ) ) | Judge Joan B. Gottschall |
| DIRECTSAT USA, LLC a/k/a UNITEK USA, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Darrick Hundt brought this action against "DirectSat USA, LLC a/k/a UniTek USA," based on the defendant's alleged failure to pay him and other similarly-situated employees overtime wages in violation of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.*, and the Illinois Minimum Wage Act (the "IMWA"), 815 Ill. Comp. Stat. 5/2-209. This matter comes before the court on Hundt's motion for leave to file an amended complaint. (Doc. No. 60.) For the reasons set forth below, Hundt's motion for leave to amend is granted in part and denied in part.

### I. BACKGROUND

**A.  Procedural History**

Hundt's initial complaint asserted claims against "DirectSat USA, LLC, a/k/a UniTek USA" ("DirectSat"), on behalf of himself and other similarly situated "warehouse managers." (Compl., Doc. No. 1.) In the initial complaint, Hundt alleged that DirectSat had classified him and other "warehouse managers" as "exempt from overtime pay[,] even though . . . the duties test for an overtime exemption was not met."

(*Id.* ¶¶ 9, 13, 15, 19.) As a result, Hundt and the other warehouse managers were allegedly deprived of overtime pay, in violation of the FLSA and IMWA. (*Id.* ¶¶ 8, 19-20.)

Since this is a "collective action" under the FLSA rather than a traditional class action under Federal Rule of Civil Procedure 23, Hundt is authorized to bring suit only on behalf of similarly-situated employees who "opt-in" to the case. *See Madden v. Corinthian Colls., Inc.*, No. 08 C 6623, 2009 WL 4757269, at *1-3 (N.D. Ill. Dec. 8, 2009) (describing FSLA collective action litigation process). Pursuant to an agreement between the parties, the court entered an order allowing Hundt to send opt-in notices to warehouse managers on a list provided by DirectSat. (*See* Order, Feb. 23, 2009, Doc. No. 24.) At the time the order was entered, the court denied Hundt's oral motion to compel discovery relating to "warehouse supervisors," on the grounds that the issue was "not yet ripe." (*Id.*)

Donald Caswell was one of the prospective plaintiffs who returned an opt-in notice to Hundt's counsel. (Notice of Consent, Doc. No. 30.) In the notice, Caswell claimed to have been "employed by DirectSat as a warehouse manager within the prior three (3) years." (*Id.*) DirectSat moved to strike Caswell's notice, arguing that "[a]lthough Mr. Caswell has worked for DirectSat, he was never employed as a warehouse manager." (Mot. to Strike ¶ 7, Doc. No. 35.) The court denied DirectSat's motion, holding that:

> The court's [February 23, 2009] order requiring Defendant to produce a list of warehouse managers for notice purposes did not state or imply that the final plaintiff class would be limited based upon Defendant's characterization of its employees' positions. To the contrary, under FLSA job titles are insufficient to create or defeat a claimed exemption from the overtime pay rules. Accordingly, after discovery has closed the court may

2

need to look past Defendant's job titles to see whether or not opt-in plaintiffs are similarly situated to each other.

(Order, July 2, 2009, Doc. No. 54.)

**B.    Proposed Amended Complaint**

The proposed amended complaint seeks to add UniTek and FTS as defendants, both of which are alleged to be subsidiaries of DirectSat. (*See* Proposed Am. Compl. ¶ 7, Ex. A to Mot.) According to Hundt, DirectSat, UniTek, and FTS (collectively, the "Corporate Defendants") are all headquartered in Pennsylvania. (*Id.* ¶¶ 6-8.) Only DirectSat and UniTek are alleged to have "places of business" in Illinois. (*Id.* ¶¶ 6-7.)

The proposed amended complaint also seeks to add a number of individual UniTek and FTS officers as defendants. (*See id.*) Specifically, Hundt seeks to bring claims against Dan Yannantuono, CEO of DirectSat; Chris Perkins, CEO of FTS; Elizabeth Downey, Chief Administrative Officer and former Director of Human Resources at UniTek; and Cathy Lawley, current Director of Human Resources at UniTek (collectively, the "Individual Defendants"). (*Id.* ¶¶ 9, 12, 15, 18.) According to the proposed amended complaint, the Individual Defendants were responsible for "devising, directing, implementing, and supervising the wage and hour practices and policies relating to employees." (*Id.* ¶¶ 10, 13, 16, 19.) Hundt alleges that the Individual Defendants have authority to "hire and fire employees, . . . direct and supervise work of employees, . . . sign on corporate checking accounts, including payroll accounts, and . . . make decisions regarding wage and hour classifications, employee compensation and capital expenditures." (*Id.* ¶¶ 9, 12, 15, 18.) The "policies and practices" instituted by the Individual Defendants allegedly "treated Plaintiff and other warehouse managers, warehouse supervisors and persons with other similarly-titled positions as exempt from

3

overtime pay even though . . . the duties test for an overtime exemption was not met." (*Id*. ¶ 23.) The proposed amended complaint also seeks expand the putative class of plaintiffs to include "warehouse supervisors and other similarly-titled positions." (*Id*. ¶ 5.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading "once as a matter of course" within 21 days of service or the filing of a responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," and the court "should freely give leave when justice so requires." *Id*. 15(a)(2). "However, a court may refuse to give leave to amend based upon undue delay, bad faith, dilatory motive, prejudice, or futility." *Adams v. Szczerbinski*, 329 Fed. Appx. 19, 22-23 (7th Cir. 2009). An amendment is "futile" if it would not withstand a motion to dismiss for lack of personal jurisdiction. *See Farmer v. DirectSat USA, LLC*, No. 08-cv-3962, 2010 WL 380697, at *1 (N.D. Ill. Jan. 28, 2010).

"A complaint need not include facts alleging personal jurisdiction." *Chi. Reg'l Council of Carpenters v. Joseph J. Sciamanna, Inc.*, No. 08 C 4636, 2009 WL 1543892, at *2 (N.D. Ill. June 3, 2009) (citing *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998)). "[O]nce a defendant moves to dismiss the complaint under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of establishing the existence of jurisdiction." *Id*. (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A*., 338 F.3d 773, 782 (7th Cir. 2003)). "If the defendant submits affidavits or other evidence opposing the exercise of jurisdiction, 'the plaintiff must go beyond the

pleadings and submit affirmative evidence supporting the exercise of jurisdiction.'" *Id.* (citing *Purdue Research Found.*, 338 F.3d at 782). "[T]he court must resolve any factual disputes in the plaintiff's favor, but must accept the allegations in the complaint as true only to the extent that they are not controverted by other evidence in the record." *Consumer Program Admin., Inc. v. K.B. Parrish & Co., L.L.P.*, No. 09 C 3731, 2009 WL 4788681, at *1 (N.D. Ill. Dec. 9, 2009) (citing *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987)). "'The [c]ourt resolves factual disputes in the pleadings and affidavits in favor of the party asserting jurisdiction, but takes as true those facts contained in the defendant's affidavits that remain unrefuted by the plaintiff.'" *Chi. Reg'l Counsel of Carpenters*, 2009 WL 1543892, at *2 (quoting C.*S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, No. 08 C 1548, 2009 WL 57455, at *3 (N.D. Ill. Jan. 7, 2009)).

### III. ANALYSIS

DirectSat argues that an amendment adding UniTek, FTS, and the Individual Defendants as defendants would be futile and prejudicial. (*See* Resp., Doc. No. 64.) DirectSat also contends that Hundt's attempt to expand the putative class to include "warehouse supervisors" falls afoul of the court's previous orders, and would prejudice defendants. (*See id.*) The court agrees that the amendment would be futile with respect to FTS and Perkins. The court disagrees, however, with DirectSat's other arguments and finds that the addition of UniTek, Yannantuono, Downey, and Lawley would be neither futile nor prejudicial. The court also finds that expansion of the putative class to include "warehouse supervisors" is not precluded by the court's earlier rulings, and would not be prejudicial to the defendants.

**A.     Unitek, FTS, and the Individual Defendants**

1.  **Futility**

    a.  **Minimum Contacts**

"A federal court sitting in diversity has personal jurisdiction only where a court of the state in which it sits would have such jurisdiction." *Citadel Group Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008); *see* also Fed. R. Civ. P. 4(k)(1)(A). The Illinois long-arm statute contains a "catch-all" provision, which permits courts to "exercise jurisdiction on any . . . basis . . . permitted by the . . . Constitution of the United States." *Id*. (quoting 735 Ill. Comp. Stat. 5/2-209(c)). "Thus, the 'catch-all' requirements are co-extensive with the . . . federal constitutional requirements." *Id*. "The Due Process Clause of the Fourteenth Amendment prevents a state from exercising . . . jurisdiction over a defendant, unless the defendant had 'certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two kinds of personal jurisdiction, "general" and "specific." *See id.* "General jurisdiction is appropriate where the defendant's contacts with the forum state are 'continuous and systematic.'" *Id*. at 760 n.3 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). Specific jurisdiction applies where the suit "arises out of or is related to the defendant's contacts with the forum." *Id.* (citing *Helicopteros Nacionales de Colombia*, 466 U.S. at 416.) In order to exercise specific jurisdiction over an out-of-state defendant, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*. at 761 (quoting *Burger King Corp.*

*v. Rudzewicz*, 471 U.S. 462, 473 (1985)). The defendant's contacts with the forum state must not be "random, fortuitous, or attenuated;" rather, the defendant's contacts must be "such that [the defendant] should 'reasonably anticipate being haled into court there.'" *Id.* (quoting *Burger King*, 471 U.S. at 473).

DirectSat argues that FTS, Perkins, and Lawley lack sufficient "minimal contacts" with Illinois for the court to exercise specific personal jurisdiction over them.[1] (Resp. at 5-6.) In support of its argument, DirectSat has submitted an affidavit from Perkins stating that "FTS does not operate, and has never operated in the Chicago, Illinois market, or within 100 miles of the Chicago, Illinois market." (Perkins Aff. ¶ 6, Ex. A to Resp.) Perkins testifies that he has never traveled to Illinois on behalf of FTS, and that he lives full-time in Texas. (*Id.* ¶¶ 1, 8.) Lawley also submitted an affidavit stating that she visited Illinois no more than five times in the last four years for UniTek, that she is "no longer required to travel for [her] position with UniTek," and that she lives full-time in Pennsylvania. (Lawley Aff. ¶¶ 5-7, Ex. A to Resp.) Hundt makes three primary counter arguments, which the court will address in turn.

As a threshold matter, Hundt argues that DirectSat—the only defendant currently before the court—lacks "standing" to object on behalf of UniTek and the Individual Defendants. (Reply at 1, Doc. No. 65.) The question of standing is irrelevant, however, in opposing a motion for leave to amend.[2] *See Johnson v. Dossey*, 515 F.3d 778, 780 (7th

---

[1] DirectSat does not contest the court's jurisdiction over DirectSat and UniTek, both of whom allegedly have "places of business" in Illinois. (*See* Resp.; Surreply, Doc. No. 69; Proposed Am. Compl. ¶¶ 6-7.) Nor does DirectSat contest that Yannantuono and Downey have sufficient "minimal contacts" with Illinois. (*See* Resp.; Surreply; Proposed Am. Compl. ¶¶ 6-7.)

[2] The only case cited by Hundt in support of his standing argument, *Ashcroft v. Dept. of Corrs.*, No. 05CV488, 2007 WL 1989265 (W.D.N.Y. July 6, 2007), is inapposite. (*See* Reply at 1-2.) In that case, the court held that the defendant lacked standing to move for dismissal of certain claims brought only against a group of non-appearing co-defendants. *Ashcroft*, No. 05CV488, 2007 WL 1989265, at *8. In this case, by

Cir. 2008) ("A district court need not allow the filing of an amended complaint, even when no responsive pleading has been filed, if it is clear that the proposed amended complaint is deficient and would not survive a motion to dismiss."). In any event, there is no reason to worry about standing when Yannantuono, Perkins, and Downey have all submitted affidavits in support of DirectSat's opposition brief. (*See* Affs., Ex. A to Proposed Am. Compl.)

Hundt concedes that "he has not sufficiently alleged that Perkins or FTS affirmatively established minimum contacts in Illinois for the purposes of this overtime suit." (Reply at 5.) Nonetheless, Hundt argues that denial of his motion for leave to amend would be "premature" because "Plaintiff may yet establish personal jurisdiction through either consent, or serving Perkins or FTS while they are physically present in Illinois." (*Id*. at 5-6.) The court declines to grant Hundt's motion based on the possibility that Perkins or FTS may one day establish sufficient contacts with the state. Considering that Perkins already submitted an affidavit in support of DirectSat's opposition brief, it seems extremely unlikely that Perkins or FTS will consent to jurisdiction. (*See* Perkins Aff.) Hundt does not indicate that he expects Perkins or FTS to become physically present in Illinois any time soon (*see* Mot., Reply), and Perkins avers that neither he nor FTS has done business in this state (*see* Perkins Aff. ¶ 6).

Finally, Hundt argues that Lawley is subject to the jurisdiction of the court because she "directly caused damages in Illinois and established minimal contacts by . . . setting the pay policies that are the subject of this complaint." (Reply at 5.) The court agrees. *Stickle v. SCI Western Market Support Center, L.P*., No. CV 08-083-PHX-MHM,

---

contrast, the Corporate Defendants and Individual Defendants are co-defendants to all of Hundt's proposed claims. (*See* Proposed Am. Compl. )

2008 WL 4446539 (D. Ariz. Sept. 30, 2008), is instructive.[3] The plaintiffs in *Stickle* filed suit against SCI and a number of its officers for allegedly violating the FLSA. *Id*. at *1-2. According to the complaint, SCI and the officers enacted various policies that deprived plaintiffs of overtime pay. *Id*. One of the officers, Jones, filed a motion to dismiss for lack of personal jurisdiction, arguing that she lacked sufficient contacts with the forum state. *Id*. at *9. The court disagreed, holding that:

> Though Ms. Jones contends that she has not hired, terminated, or supervised the SCI employees involved in this lawsuit, nor any other employees of SCI, including SCI locations in Arizona, she has not contested the allegations that she is actively involved in the policies that affect those employees. . . . Thus, through Ms. Jones' asserted involvement with the human resources policies affecting SCI employees across the country, . . . Plaintiffs have met the "purposeful availment" prong . . . .

*Id*. The *Stickle* court held that plaintiffs' claims "arose out of" Jones' forum-related activities, since plaintiffs would not have been deprived of overtime pay "but for" the policies enacted by Jones. *Id*. "[I]n light of Ms. Jones' position and her responsibilities within the Company," the court ruled, "she has not established that exercising jurisdiction over her would be unreasonable." *Id*. The court's holding in *Stickle* is consistent with Seventh Circuit precedent, which recognizes that "although [a defendant] may [have] acted from points outside the forum state," the defendant has sufficient "minimal contacts" where they "specifically aimed their tortious conduct at [the plaintiff] in Illinois, with the knowledge that he lived, worked, and would suffer the 'brunt of the injury' there." *Tamburo v. Dworkin*, --- F.3d ----, No. 08-2406, 2010 WL 1387299, at *10 (7th Cir. Apr. 8, 2010).

---

[3] *See also Brujis v. Shaw*, 876 F. Supp. 975, 977 (N.D. Ill. 1995) (holding that corporate president and vice president were subject to personal jurisdiction for directing use of misleading company name in Illinois, despite total absence of any other contacts with the state).

9

Lawley does not dispute that she was responsible for "devising, directing, implementing, and supervising the wage and hour practices and policies relating to employees," or that these policies affected Hundt and the other warehouse managers in Illinois. (*Compare* Lawley Aff. *with* Proposed Am. Compl. ¶¶ 13, 23.) Like the defendant in *Stickle*, Lawley has therefore failed to contradict Hundt's allegations of "purposeful availment." Nor has Lawley come forth with any evidence to rebut Hundt's allegation that his claims would not have arisen "but for" the policies enacted by Lawley. (*Compare* Lawley Aff. *with* Proposed Am. Compl. ¶ 23.) Hundt's *prima facie* showing that his claims "arose out of" Lawley's contacts with Illinois therefore remains unchallenged. What is more, the court does not believe it would be unfair to hale Lawley into court in Illinois, considering her position within the company. As the "human resource manager" for UniTek and its subsidiaries, Lawley does not dispute that she has the power to "hire and fire employees, . . . direct and supervise work of employees, . . . sign on corporate checking accounts, including payroll accounts, and . . . make decisions regarding wage and hour classifications, employee compensation and capital expenditures."[4] (*Compare* Lawley Aff. ¶ 2 *with* Proposed Am. Compl. ¶ 12.) Hundt has therefore shouldered his burden of demonstrating Lawley's minimal contacts with Illinois.

    b.    **Fiduciary Shield Doctrine**

---

[4] In *Farmer v. DirectSat USA, LLC*, 2010 WL 380697, at *1, a putative class of satellite installation technicians filed suit against a number of UniTek officers, including Lawley, for alleged violations of the FLSA. Judge St. Eve granted Lawley's motion to dismiss for lack of personal jurisdiction, holding that the complaint was devoid of any allegations that Lawley had "implemented policies that directly impacted Illinois employees." *Id.* at *7. In this action, by contrast, Hundt has clearly alleged (and Lawley has failed to contest) that Lawley was responsible for implementing the policies that allegedly affected warehouse managers in Illinois. (*See* Proposed Am. Compl. ¶¶ 13, 23.)

Under the fiduciary shield doctrine, "Illinois [state and federal] courts lack personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal."[5] *C.S.B. Commodities*, 626 F. Supp. 2d at 847 (Dow, J.) (citing *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1995); *Rollins v. Ellwood*, 565 N.E.2d 1302 (Ill. 1990)). "Application of the doctrine is discretionary or equitable, not absolute." *Id*. In deciding whether to apply the doctrine in a particular case, courts consider whether "(i) the individual's personal interests motivated his actions and presence and (ii) the individual's actions are discretionary." *Id.*

DirectSat argues that Yannantuono, Downey, and Lawley are protected by the fiduciary shield doctrine because their contacts with Illinois were made while "conducting business on behalf of DirectSat, FTS and/or UniTek in their capacity as officers." (Resp. at 7.) Hundt argues that the fiduciary shield doctrine does not apply to "high-ranking corporate officer[s]" like Yannantuono, Downey, and Lawley, "who [have] the ability to decide not to violate the law." (Reply at 7-8.) According to DirectSat, however, "the dispositive inquiry focuses on whether the individual is a shareholder of the employer."[6] (Surreply at 4.) Since neither Yannantuono, Downey, nor Lawley own

---

[5] "Courts in this district consistently have applied the fiduciary shield doctrine in federal question cases, although it appears to be the only instance in which Illinois and federal due process may not be co-extensive." *C.S.B. Commodities*, 626 F. Supp. 2d at 847. As noted by the Seventh Circuit in *Rice*, 38 F.3d at 911, the fiduciary shield doctrine has been "much criticized and by many jurisdictions rejected."

[6] DirectSat cites *Consumer Benefit Servs., Inc. v. Encore Mktg. Int'l. Inc.*, No. 01 C 6985, 2002 WL 31427021 (N.D. Ill. Oct. 30, 2002) (St. Eve, J.) (holding that corporate officers who were also shareholders could not use fiduciary shield doctrine), and *Plastic Film Corp. of Am. v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1147 (N.D. Ill.) (Bucklo, J.) (holding that CEO who owned no shares in company was entitled to fiduciary shield), in support of the proposition that only an officer who is also a shareholder can be excluded from the fiduciary shield doctrine. (*See* Surreply at 4.) Contrary to DirectSat's suggestion, neither case holds that stock ownership is the sole factor in determining whether to apply the fiduciary shield doctrine. (*See id.*) Though a corporate officer's stock ownership may be "determinative" under certain circumstances, a corporate officer can still lose the protection of the fiduciary shield doctrine

stock in any of the Corporate Defendants, DirectSat argues they are entitled to protection under the fiduciary shield doctrine. (*See id.* (citing Yannantuono Aff. ¶¶ 10-11; Lawley Aff. ¶ 8; Lejman Aff. ¶ 14).) The court agrees with Hundt.

"Some courts [in this district] have held that discretionary action by the defendant alone is enough to negate the protection of the fiduciary shield." *C.S.B. Commodities*, 626 F. Supp. 2d at 847 (citing cases). "Other courts have found that while an individual's position within the company is relevant to the 'discretionary' assessment, it is not dispositive." *Id.* (citing cases). For these courts, "the level of discretion is not itself determinative, and must instead be viewed within the context of the entirety of the circumstances." *Minemyer v. R-Boc Representatives, Inc.*, No. 07 C 1763, 2007 WL 2461666, at *4 (N.D. Ill. Aug. 24, 2007) (Coar, J.). "The [c]ourt must weigh each factor in turn, but must also consider based on equitable principles, whether the factual scenario in its entirety warrants application of the shield against personal jurisdiction." *Id*. "The more an individual . . . defendant was carrying out orders and duties, and the less he exercised personal discretion and interest in creating the relevant contacts," the more likely it is that the court will award him or her protection under fiduciary shield doctrine.[7] *In re Teknek, LLC*, 354 B.R. 181, 196 n.5 (Bankr. N.D. Ill. 2006). "Being a director, officer, or member of management does not alone put a defendant within the corollary, though it most certainly puts him near or on the line." *Id*.

### i. Yannantuono

---

regardless of stock ownership if he or she is a "high ranking" officer with substantial discretion over the complained-of conduct. *See*, *e.g.*, *C.S.B. Commodities*, 626 F. Supp. 2d at 847.

[7] "It is important to note that when considering the Defendant's level of discretion, this Court does not consider those actions that caused employer to enter the forum state, but rather the actions that allegedly gave rise to personal jurisdiction over the Defendant himself within that state." *Minemyer*, 2007 WL 2461666, at *6.

Courts in this district have consistently refused to apply the fiduciary shield doctrine to corporate presidents and CEOs, regardless of whether they are shareholders or not. *See C.S.B. Commodities*, 626 F. Supp. 2d at 847-88; *Zurich Capital Mkts. Inc. v. Colglianese*, 388 F. Supp. 2d 847, 860 (N.D. Ill. 2004) (St. Eve, J.) (holding that "two most senior persons" in company were not entitled to fiduciary shield because of their "significant discretion."); *Weyent v. Vertical Networks, Inc.*, No. 03 C 4214, 2004 WL 421745, at *4 (N.D. Ill. Dec. 3, 2004) (Darrah, J.) (holding that president/CEO was not entitled to fiduciary shield where he had discretion to authorize payments under disputed compensation plan but chose not to); *Roy v. Austin Co.*, No. 94 C 740, 1995 WL 230949, at *2 (N.D. Ill. Apr. 14, 1995) (Williams, C.J.) (holding that president was not entitled to fiduciary shield where he exercised discretion to fire plaintiff in Illinois). *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd*. is illustrative. The plaintiff in that case brought an unfair competition suit against Urban Trend and its president, Kushner. *C.S.B. Commodities*, 626 F. Supp. 2d at 841-42. Kushner argued that he was protected by the fiduciary shield doctrine, because his attempts to promote an allegedly infringing product at an Illinois trade show were undertaken on behalf of the company. *Id*. at 487-88. The court disagreed, holding that:

> Marketing and selling the product at an international trade show certainly would redound to the benefit of Urban Trend. And it is more than a fair assumption that Kushner, as President of the corporation, would share in that benefit independently of the corporation.

*Id*.

Yannantuono does not dispute that he was a "high-ranking" corporate officer. (*Compare* Yannantuono Aff. *with* Reply at 4.) To the contrary, Yannantuono admits that he is CEO of DirectSat, and that he previously served as DirectSat's president.

(Yannantuono Aff. 2.) Yannantuono likewise fails to contest Hundt's allegation that he was responsible for "devising, directing, implementing, and supervising the wage and hour practices and policies relating to employees," and "mak[ing] decisions regarding wage and hour classifications." (*Compare* Yannantuono Aff. *with* Proposed Am. Compl. ¶¶ 15-16.) The fact that Yannantuono did not own any shares in DirectSat or UniTek is not dispositive, since Yannantuono's position within the company would, like the defendant in *C.S.B. Commodities*, allow him to share in the company's success "independently of the corporation." *See C.S.B. Commodities*, 626 F. Supp. 2d at 487-88. In light of Yannantuono's role in the company, the court finds that he is not entitled to the protection of the fiduciary shield doctrine.

### ii. Lawley and Downey

The fiduciary shield calculus is less clear-cut with respect to Lawley and Downey, who are corporate officers but presumably fall somewhere below the level of president or CEO. Courts in this district have reached varying conclusions as to whether corporate officers below the level of president or CEO are entitled to protection under the fiduciary shield doctrine, with outcomes dependent on the circumstances of each case. *Compare Minemeyer*, 2007 WL 2461666, at *4-7 (holding that senior vice president was an "officer" with discretion over negotiations of contract at issue); *Clearclad Coatings, Inc. v. Xontal Ltd.*, No. 98 C 7199, 1999 WL 652030, at *25 (N.D. Ill. Aug. 20, 1999) (Pallmeyer, J.) (holding that technical director/deputy board member was an "officer" with "discretion to act" and therefore not entitled to fiduciary shield); *Darovec Mktg. Group, Inc. v. Bio-Genetics, Inc.*, 42 F. Supp. 2d 810, 820 (N.D. Ill. 1999) (Gettleman, J.) (holding that "compliance coordinator" who had discretion over publication and contents

of allegedly defamatory memo, and authority to terminate distributors, was not entitled to fiduciary shield); *with Vasilj v. Duzich*, No. 07 C 5462, 2008 WL 2062371, at *6 (N.D. Ill. May 13, 2008) (Zagel, J.) (holding that vice president protected by fiduciary shield where he did not own shares in company or stand to profit from transaction at issue); *Cont'l Cas. Co. v. Marsh*, No. 01 C 0160, 2002 WL 31870531, at*7 (N.D. Ill. Dec. 23, 2002) (Nolan, J.) (holding that vice president entitled to fiduciary shield doctrine despite high rank and discretion where he did not own shares in company and acted on company's behalf).

Lawley attests that that she is a "human resource manager," and that her job duties include "overseeing the human resources management for UniTek and its subsidiaries." (Lawley Aff. ¶ 2.) According to another affidavit, Downey is the "Chief Administrative Officer" of UniTek. (Lejman Aff. ¶ 11.) Although it is unclear where Lawley and Downey fit within UniTek's corporate hierarchy, DirectSat does not dispute Hundt's characterization of them as "high-ranking corporate officers." (*Compare* Reply at 8 *with* Resp., Surreply.) DirectSat also fails to contradict Hundt's allegations that Lawley and Downey were responsible for "devising, directing, implementing, and supervising the wage and hour practices and policies relating to employees," and that they had authority to "hire and fire employees, . . . direct and supervise work of employees, . . . sign on corporate checking accounts, including payroll accounts, and . . . make decisions regarding wage and hour classifications, employee compensation and capital expenditures." (*Compare* Resp., Surreply *with* Proposed Am. Compl. ¶¶ 9-10, 12-13.) Since the court "must accept the allegations in the complaint as true . . . to the extent that they are not controverted by other evidence in the record," *Consumer*

*Program Admins*., 2009 WL 4788681, at *1, the court finds that Hundt has carried his burden of establishing jurisdiction over Lawley and Downey.

The court's conclusion on this point is bolstered by Judge St. Eve's opinion in *Farmer v. DirectSat*. As the court explained in footnote 4 of this opinion, *Farmer* was an FLSA action brought by a putative class of satellite installation technicians against many of the same defendants Hundt seeks to add in the case *sub judice*. *See Farmer*, 2010 WL 380697, at *1-2. In *Farmer*, Judge St. Eve ruled that Downey and Lawley were not entitled to protection under the fiduciary shield doctrine, on the following grounds:

> While the Court makes no determination as to whether each of these positions is necessarily 'high-ranking,' the allegations of the Amended Complaint are sufficient to infer that each of the proposed individual defendants had significant discretion in their roles at UniTek and DirectSat. Indeed, . . . DirectSat confirms the corporate positions held by each of the proposed individual defendants. Moreover, while DirectSat establishes through affidavits that the proposed individual defendants are not shareholders of DirectSat or UniTek, DirectSat does not refute the alleged roles played by each proposed individual defendant. Given the unrefuted allegations regarding the proposed individual defendants' corporate roles and discretion, the fiduciary shield doctrine does not apply.

*Id*. at *4. Judge St. Eve's reasoning applies with equal force to the instant action, where DirectSat also fails to rebut critical allegations in Hundt's proposed amended complaint. The court therefore declines to apply the fiduciary shield doctrine with respect to Downey or Lawley.

### 2. Prejudice

DirectSat lists a number of reasons why UniTek and the Individual Defendants will be prejudiced by the proposed amended complaint. (*See* Resp. at 9-14.) The court rejects these arguments. First, DirectSat claims that that the proposed addition of the Individual Defendants is "for harassment purposes only." (*Id*. at 9.) But Hundt's

proposed amended complaint cannot be characterized as "harassment" when it seeks to assert facially valid claims against the Individual Defendants. Next, DirectSat argues that the Individual Defendants will be prejudiced by having to "defend[ ] a lawsuit . . . in a venue hundreds of miles from where they live and work." (*Id*. at 10.) The law is clear, however, that "requiring a non-resident defendant to defend an action in Illinois is not an undue burden if the plaintiffs can properly establish jurisdiction over that defendant." *Farmer*, 2010 WL 380697, at *2. DirectSat complains that the Individual Defendants "may face liability beyond the statute of limitations" as a result of the amendment. (Resp. at 10.) The court fails to see how this could be so, and in any event the court can easily dispose of any untimely claims upon proper motion by the Individual Defendants. Finally, DirectSat argues without elaboration that UniTek will be prejudiced by Hundt's "delay" in attempting to add UniTek as a defendant. (*Id.* at 14.) It is unclear how UniTek will be prejudiced by the delay, since discovery is currently stayed, and no date has been set for trial. (Minute Entry, Apr. 14, 2010, Doc. No. 100.) The court therefore determines that neither UniTek nor the Individual Defendants will suffer prejudice as a result of Hundt's proposed amendment.

**B.  Warehouse Supervisors**

As set forth above, Hundt's proposed amended complaint seeks to expand the putative class to include "warehouse supervisors and other similarly-titled positions." (Proposed Am. Compl. ¶ 5.) DirectSat argues that Hundt is precluded from expanding the class by this court's previous orders, and by the prejudice DirectSat would allegedly face as a result. (*See* Resp. at 14-15.) DirectSat's arguments are without merit.

Citing to the court's February 23, 2009 order, DirectSat argues that the proposed amended complaint would "re-open the class already defined by [the court] after the opt-in period closed." (Resp. at 14.) None of the court's previous orders were intended to foreclose Hundt from expanding the class at a later date. Although the court denied Hundt's motion for discovery on "warehouse supervisors," the court nowhere suggested that such discovery should never take place, or that the class could never be expanded. (*See* Order, Feb. 23, 2009.) Indeed, the court clarified in a subsequent order that it "did not state or imply that the final plaintiff class would be limited based upon Defendant's characterization of its employees' positions," and that "job titles are insufficient to create or defeat a claimed exemption from the overtime pay rules." (Order, July 2, 2009.)

DirectSat complains that expansion of the class will require DirectSat to "conduct additional discovery and re-litigate issues already disposed of by this [c]ourt." (Resp. at 15.) DirectSat's concerns are unfounded. There is no reason Hundt should not be able to take "additional discovery," since the discovery period has yet to run. What is more, the court can easily prevent Hundt from taking duplicative discovery or re-litigating issues. In light of the liberal amendment policies embodied by Rule 15(a), and considering DirectSat's failure to demonstrate any prejudice resulting from the amendment, Hundt's motion is granted with respect to the "warehouse supervisors and other similarly-titled positions."

### IV. CONCLUSION

For the foregoing reasons, Hundt's motion for leave to file an amended complaint [Doc. No. 60] is granted to the extent it seeks to (i) add UniTek, Yannantuono, Downey, and Lawley as defendants, and (ii) expand the putative class of plaintiffs to include

"warehouse supervisors and other similarly-titled positions." Hundt's motion is denied to the extent is seeks to add FTS and Perkins as defendants. Hundt is hereby ordered to file a revised amended complaint within 30 days of the entry of this order.


ENTER:                         /s/
                               JOAN B. GOTTSCHALL
                               United States District Judge

DATED: May 17, 2010