UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARRICK HUNDT, on behalf of himself and all other plaintiffs similarly situated, known and unknown, </br></br>Plaintiff,</br></br>v.</br></br>DIRECTSAT USA, LLC a/k/a UNITEK USA,</br></br>Defendant. | Case No. 08 C 7238 </br></br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Darrick Hundt brought this action against DirectSat USA, LLC ("DirectSat"), based on DirectSat's alleged failure to pay Hundt and other similarly situated employees overtime wages in violation of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.*, and the Illinois Minimum Wage Act (the "IMWA"), 815 Ill. Comp. Stat. 5/2-209. This matter comes before the court on Hundt's motion to "send notice to additional members of the plaintiff class." (Doc. No. 80.) For the reasons set forth below, Hundt's motion is granted.

### I.   BACKGROUND

Hundt originally filed this lawsuit against DirectSat on behalf of himself and other similarly situated "warehouse managers." (Compl., Doc. No. 1.) According to the complaint, DirectSat classified Hundt and other "warehouse managers" as "exempt from overtime pay[,] even though . . . the duties test for an overtime exemption was not met." (*Id.* ¶¶ 9, 13, 15, 19.) As a result, Hundt and the other warehouse managers were

allegedly deprived of overtime pay, in violation of the FLSA and IMWA. (*Id*. ¶¶ 8, 19-20.)

Pursuant to an agreement between the parties, the court entered an order allowing Hundt to send opt-in notices to individuals on a list of warehouse managers provided by DirectSat. (*See* Order, Feb. 23, 2009, Doc. No. 24.) Donald Caswell was one of the prospective plaintiffs who returned an opt-in notice. (Notice of Consent, Doc. No. 30.) In the notice, Caswell claimed to have been "employed by DirectSat as a warehouse manager within the prior three (3) years." (*Id.*) DirectSat moved to strike Caswell's notice, arguing that "[a]lthough Mr. Caswell has worked for DirectSat, he was never employed as a warehouse manager." (Mot. to Strike ¶ 7, Doc. No. 35.) The court denied DirectSat's motion, holding that:

> The court's [February 23, 2009] order requiring Defendant to produce a list of warehouse managers for notice purposes did not state or imply that the final plaintiff class would be limited based upon Defendant's characterization of its employees' positions. To the contrary, under FLSA job titles are insufficient to create or defeat a claimed exemption from the overtime pay rules. Accordingly, after discovery has closed the court may need to look past Defendant's job titles to see whether or not opt-in plaintiffs are similarly situated to each other.

(Order, July 2, 2009, Doc. No. 54.)

Hundt subsequently moved for leave to file an amended complaint, which the court granted over DirectSat's objection. (*See* Order, May 17, 2010, Doc. No. 102.) The proposed amended complaint sought, among other things, to expand the putative class to include "warehouse supervisors and other similarly-titled positions."[1] (Proposed Am. Compl. ¶ 5, Ex. A to Mot. for Leave to Amend., Doc. No. 60.) A final version of the

---

[1] The court also granted Hundt's motion for leave to amend to the extent it sought to add UniTek USA, LLC, Dan Yannantuono, Elizabeth Downey, and Cathy Lawley as defendants in this action. (*See* Order, May 17, 2010.)

2

proposed complaint has yet to be filed, and DirectSat is the only defendant currently before the court.

## II. LEGAL STANDARD

Section 216(b) of the FLSA permits plaintiffs to bring a "collective action" against an employer for unpaid overtime compensation on behalf of him or herself and "other employees similarly situated." 29 U.S.C. § 216(b). Neither the FLSA nor the Seventh Circuit has set forth criteria for determining whether employees are "similarly situated." *AON Corp. Wage & Hour Employment Practices Litig.*, No. 08 C 5802, 2010 WL 1433314, at *5 (N.D. Ill. Apr. 8, 2010). Nonetheless, courts in this district and around the country have settled on a two-step procedure for dealing with collective actions under the FLSA. *See id.* (citing *Anderson v. Cagle's Inc.*, 488 F.3d 945, 951-54 (11th Cir. 2007); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001)).

"At the first stage, the court leniently reviews pleadings and affidavits to determine whether there are allegations sufficient for the court to find that the representative plaintiff and putative class members are similarly situated." *Id.* In order to satisfy this burden, a plaintiff need only make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* "This determination usually results in a 'conditional certification' of the representative class participants," after which the court may "order that notice be provided to the potential participants." *Shiner*, 2009 WL 4884166, at *2. "Plaintiff need not show that potential class members performed identical duties to meet this standard, and conditional certification may be appropriate even if differences exist

between their job titles, functions, or pay." *Olmstead v. Residential Plus Mortgage Corp.*, No. 08 C 142, 08 C 419, 2008 WL 5157973, at *3 (N.D. Ill. Dec. 9, 2008). Although the inquiry is "undemanding," *Shiner v. Select Comfort Corp.*, No. 09 C 2630, 2009 WL 4884166, at *3 (N.D. Ill. Dec. 9, 2009), "the court is under no obligation, as it would be on a motion to dismiss, to accept the plaintiff's allegations as true," *Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *5 (N.D. Ill. Jan. 20, 2009). "Rather, the court evaluates the record before it, including [the defendant's] oppositional affidavits, to determine whether the plaintiffs are similarly situated to other putative class members." *Id.*

"The second stage occurs later in the litigation, after all or a significant portion of discovery has been completed and the defendant has filed a motion for decertification." *AON Corp.*, 2010 WL 1433314, at *5. At the second stage, the court will "employ a much stricter standard in making a final determination on the similarly situated question considering a number of factors including the disparate factual and employment settings of the individual plaintiffs and the defenses available to defendants that are individual to each plaintiff." *Id.*

### III. ANALYSIS

As a threshold matter, the Parties agree that Hundt should be permitted to send opt-in notices to five "warehouse managers" that DirectSat failed previously to disclose.[2] (*See* Resp. at 4-5, Doc. No. 91.). The parties also agree that the statute of limitations should be tolled with respect to those five warehouse managers from the date of the original notice. (*See id.*) The parties disagree, however, as to whether the putative class

---

[2] The names of the five warehouse managers are Peter Wagner, Michele Cavanaugh, Tim Foley, Colin Cleary, and Greg Reiner. (*See* Resp.)

4

should be conditionally certified to include "warehouse supervisors or other similar employees that were treated as exempt from overtime." (Mot. ¶ 8.) DirectSat argues that "there are significant differences among the warehouse managers and supervisors that render them not similarly-situated," and "[Hundt] has failed to support his . . . allegations with . . . sufficient evidence that demonstrates the existence of a single common decision, policy or plan that violates the FLSA." (Resp. at 13.) Hundt argues that "warehouse supervisors" and various other warehouse employees were "similarly situated to the warehouse managers in that they worked in Defendants' warehouses, were paid salaries, treated as exempt from overtime pay, and referred to as warehouse managers."[3] (Reply at 4, Doc. No. 95.) The Court agrees with Hundt.

A.   **Common Policy or Plan**

Contrary to DirectSat's assertion, Hundt has adduced evidence of "a common policy or plan" that affects both warehouse managers and warehouse supervisors. *See Aon*, 2010 WL 1433314, at *9. (*See* Mot. ¶ 5.) One of the exhibits to Hundt's motion is a list obtained from DirectSat in discovery that sets forth names, job descriptions, and compensation information for various warehouse personnel. (*See* Mot. (citing List, Ex. A).) The list indicates that Donald Caswell and several other individuals were employed as salaried warehouse supervisors. (*See id.* (citing List).) In support of his motion, Hundt also attaches DirectSat's interrogatory responses, which state that "DirectSat pays exempt employees a salary, and did not monitor the exact hours worked by the named

---

[3]   DirectSat argues that Hundt's attempt to expand the putative class is precluded by the court's previous order denying Hundt's motion for discovery on the issue of "warehouse supervisors." (*See* Resp. at 5-10.) DirectSat argues further that expansion of the class would be prejudicial to DirectSat, and that Hundt's motion was brought for purposes of harassment and delay. (*See id.*) The court already rejected these arguments in ruling upon Hundt's motion to dismiss, and declines to consider them again. (Order, May 17, 2010.)

Plaintiff or *any opt-in plaintiff*." (*Id*. (quoting Def.'s Supp. Answers and Objections to Pls.' First Set of Interrogs., Ex. C) (emphasis added).) Since Caswell is an "opt-in plaintiff," DirectSat's interrogatory responses suggest that Caswell, and by extension other warehouse supervisors, were paid salaries rather than hourly wages and overtime. (*See id.* ¶ 5; Reply at 4.) Thus, the list of employees and interrogatory responses taken together support the inference that warehouse managers and warehouse supervisors are all classified as exempt from overtime. (*See* Mot. ¶ 5; Reply at 4.) Hundt has therefore satisfied his burden of demonstrating that the members of the putative class "are victims of a common policy or plan." *See Olmstead*, 2008 WL 5157973, at *3 (holding that email from supervisor implying that defendant did not pay overtime wages was evidence of common policy or plan).

**B.     Similar Work Duties**

Hundt attaches two other exhibits in support of his motion in order to demonstrate that warehouse managers, warehouse supervisors, and other employees have similar duties despite their different job titles. (*See* Mot. ¶ 5.) These similarities are significant because "[t]his uniformity, when considered with other allegations that . . . employees were classified as administrative employees, regularly worked in excess of forty hours a week, and were not compensated for overtime are enough to make a preliminary determination that [the plaintiffs] were subject to a common policy in violation of the FLSA." *Aon*, 2010 WL 1433314, at *9. Both exhibits are internal emails, obtained from DirectSat during discovery.

The first email was sent by Bryan Bramson, DirectSat's "regional logistics manager," to twenty-four DirectSat employees, including Donald Caswell, all of whom

6

are referred to in the salutation as "Midwest Warehouse Managers." (*See id.* (citing Ex. D).) In the body of the email, Bramson advises the recipients that "Everyone is responsible for their own inventory hold's [sic] this week. We seem to be trending in the right direction where everyone is back under control and we can think about a weekend schedule." (*Id.* (citing Ex. D).) According to Hundt, many of these so-called "Midwest Warehouse Managers" were not included on the list of warehouse managers provided by DirectSat pursuant to this court's February 23, 2009 order. (*See id.* (comparing Exs. B and D).) DirectSat claims that these names were not produced because the employees were not "warehouse managers," but rather "general managers" or "field supervisors." (Resp. at 7-8.) The fact that Bramson referred to warehouse supervisors, general mangers, and field supervisors interchangeably as "warehouse managers" supports the inference that those employees are similarly-situated. (*See* Mot. ¶ 5; Reply at 4.) Likewise, the fact that Bramson issued orders to all of the email's recipients to be "responsible for their own inventory" and "think about a weekend schedule" suggests that those employees had at least some of the same job responsibilities. (*See* Mot. ¶ 5; Reply at 4.)

The second email is from Bramson to Abraham Asfar, another DirectSat employee, with the subject line "New Warehouse Managers in the Midwest." (Mot. ¶ 5 (citing Ex. D.) In that email, Bramson noted that an entry on a contact list previously distributed by Asfar was incorrect. (*See id.*) Bramson advised Asfar that "[the] [m]anager in Witchita was wrong. [I]t should have been Don Caswell . . . ." (*Id.* (citing Ex. D.) The fact that Bramson believed than Caswell, a warehouse supervisor, was a warehouse manager is evidence that the two positions involve substantially similar

7

responsibilities. (*See id.* (citing Ex. D.) Indeed, Caswell himself apparently believed he was a "warehouse manager," despite having worked for several years as a warehouse supervisor. (*See* Notice of Consent.) Taken together, the two emails from Bramston suggest that warehouse managers, warehouse supervisors, and other employees are similarly-situated with respect to their job duties.

DirectSat claims that "there are significant differences among the warehouse managers and supervisors that render them not similarly-situated for certification purposes under the FLSA." (Resp. at 13.) DirectSat does not, however, offer any evidence in support of its position, nor does DirectSat even attempt to explain the differences between warehouse managers and warehouse supervisors. (*See id.*) In light of Hundt's exhibits, and in the absence of any countervailing evidence from DirectSat, the court finds that Hundt has met his minimal burden to show that the warehouse managers, warehouse supervisors, general managers, and field managers are similarly-situated. Accordingly, Hundt's motion to send notice to additional members of the plaintiff class is granted.

## IV. CONCLUSION

Plaintiff's motion to send notice to additional members of the plaintiff class [Doc. No. 80] is granted. Plaintiff is ordered to send copies of the opt-in notice previously approved by the court in Doc. No. 28 to Peter Wagner, Michele Cavanaugh, Tim Foley, Colin Cleary, and Greg Reiner within thirty days of the entry of this order. By agreement of the parties, the statute of limitations is equitably tolled with respect to those putative class members. Defendant is hereby ordered to provide Plaintiffs with a list of the names and last-known addresses and telephone numbers of all warehouse supervisors, general

managers, field supervisors, and other warehouse employees classified as exempt from overtime pay, within thirty days of the entry of this order. The Parties shall submit a proposed agreed notice to the court for approval within sixty days of entry of this order.

ENTER: /s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: May 24, 2010