# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DARRICK HUNDT, Individually and on behalf ) 
of all others similarly situated, )
                                         )

                        Plaintiffs, )     Case No. 08 C 7238
                                           )

v. )     Judge Joan B. Gottschall
                                         )

DIRECTSAT USA, LLC, *et al.*, )
                                           )

                       Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Darrick Hundt sued his employer, DirectSat USA, LLC, its corporate parents, UniTek USA, LLC, and three corporate officers, Elizabeth Downey, Cathy Lawley, and Dan Yannantuono, alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.*, and the Illinois Minimum Wage Act (the "IMWA"), 815 Ill. Comp. Stat. 5/2-209. The court previously granted conditional certification and allowed Hundt to bring his FLSA claims on behalf of similarly-situated employees who opted to join the collective action under 29 U.S.C. § 216(b). Eighteen employees opted in.

Before the court are: (1) the defendants' motion to decertify the FLSA class; (2) the defendants' motion for summary judgment on the FLSA claim; and (3) the plaintiffs' motion for summary judgment on the FLSA claims. For the reasons that follow, the defendants' motions to decertify the class and for summary judgment on the FLSA claim are granted, while the plaintiffs' motion for summary judgment on the FLSA claim is denied.

# I. BACKGROUND

The following facts are agreed except where noted. Defendant DirectSat installs and services satellite equipment in the homes of customers of DirecTV. Hundt worked as a warehouse manager. DirectSat deemed the position of warehouse manager to be exempt, a classification under which DirectSat would not be required to pay Hundt overtime (one-and-one-half times regular pay) for any hours worked in excess of forty hours per week. Hundt alleges that DirectSat misclassified him as exempt and violated the FLSA by failing to pay him the overtime rate.

After the court conditionally certified this case as a collective proceeding, it allowed Hundt to send notice of the right to opt-in to the following class of persons:

> ALL PERSONS EMPLOYED AS WAREHOUSE
> SUPERVISORS, GENERAL MANAGERS, FIELD
> SUPERVISORS, AND OTHER WAREHOUSE EMPLOYEES
> BY DIRECTSAT USA, LLC OR UNITEK USA, LLC WHO
> WERE TREATED AS EXEMPT FROM OVERTIME PAY FOR
> WORK BEYOND 40 HOURS IN A WEEK FROM MARCH 1,
> 2006 TO THE PRESENT

Dkt. 119, 129. The 18 plaintiffs who opted-in worked for DirectSat in various capacities, including as warehouse manager, warehouse supervisor, project manager, field supervisor, or service/installation manager.

The defendants have filed two motions. In the first, they ask the court to decertify the class, arguing information obtained during discovery reveals that the work each plaintiff performed was varied, necessitating individual inquiries into whether each plaintiff was exempt under the FLSA. In the second, they seek summary judgment on the FLSA claim, arguing the plaintiffs failed to identify evidence that they were misclassified as exempt. The plaintiffs,

meanwhile, have filed a motion for summary judgment on the FLSA claim, arguing that the defendants failed to identify evidence that the plaintiffs (1) fell under the administrative exemption because they primarily performed manual labor, (2) fell under the executive exemption because they did not customarily and regularly supervise others, and (3) fell under the combination exemption because they did not perform any executive or administrative duties.

## II. ANALYSIS

Under the FLSA, employees are entitled to overtime pay, or one-and-a-half times regular pay, for hours worked in excess of forty hours per week, unless they fall within an exemption. *See* 29 U.S.C. §§ 207, 213.  Under § 213(a)(1), "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt.  29 U.S.C. § 213(a)(1).  Under 29 C.F.R. § 541.100(a), an executive employee is one:

(1)     Compensated on a salary basis at a rate of not less than $455 per week . . .;

(2)     Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3)     Who customarily and regularly directs the work of two or more other employees; and

(4)     Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

Under 29 C.F.R. § 541.200(a), an administrative employee is one:

(1)     Compensated on a salary or fee basis at a rate of not less than $455 per week . . .;

(2)     Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3)     Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

Determining whether an employee falls under an exemption "requires a thorough, fact-intensive analysis of the employee's employment duties and responsibilities." *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012).

The FLSA allows "any one or more employees for and in behalf of himself or themselves and other employees similarly situated" to sue an employer through a collective action to recover unpaid overtime or minimum wages. 29 U.S.C. § 216(b). Neither the FLSA nor the Seventh Circuit has set forth criteria for determining whether employees are "similarly situated" or how collective actions should proceed. *AON Corp. Wage & Hour Emp't Practices Litig.*, No. 08 C 5802, 2010 WL 1433314, at *5 (N.D. Ill. Apr. 8, 2010). However, courts in this district have commonly applied a two-part test to determine whether an FLSA claim may proceed as a collective action. *See Salmans v. Byron Udell & Assocs., Inc.*, No. 12 CV 3452, 2013 WL 707992, at * 2 (N.D. Ill. Feb. 26, 2013).

In the first stage, a court issues a "conditional certification" of the collective action if the plaintiffs show there are similarly situated employees who are potential claimants. *Id.*; *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008). At this stage, a plaintiff must make only a "modest factual showing" sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *See Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D.Ill. 2010). In the second stage, after the parties have engaged in discovery and the opt-in process is complete, the court engages in a more stringent review of whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial as a collective action. *See Camilotes v. Resurrection*

*Health Care Corp.*, 286 F.R.D. 339, 345 (N.D. Ill. 2012). The plaintiffs bear the burden of establishing that they are similarly situated. *Id.*

Against that backdrop, the court will first address the defendants' motion for decertification and reexamine whether the facts show that Hundt and the opt-in plaintiffs are similarly situated. Second, the court will address the parties' motions for summary judgment on the FLSA claim.

**A.      Motion for Decertification [Dtk. 240]**

Discovery is complete, and the parties have cited deposition testimony and other evidence obtained during discovery in support of their positions on the motion for decertification. Therefore, the court engages in the more stringent second-stage inquiry into whether this case should continue as a collective action. *See Camilotes*, 286 F.R.D. at 346. To continue as a collective action, the plaintiffs must identify a "factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws generally." *Russell*, 721 F. Supp. 2d at 812. The plaintiffs cannot establish the factual nexus by merely showing that the defendants applied an exemption to every manager and supervisor across the board. *See id.* at 813 (courts look to whether the plaintiffs "share a legal and factual nexus that is more specific than the general claim that they were illegally denied overtime pay") (internal quotation marks and citation omitted); *see also Knott v. Dollar Tree Stores, Inc.*, 897 F. Supp. 2d 1230, 1237 (N.D. Ala. 2012). Rather, evidence of an across-the-board exemption must also be accompanied by evidence that the affected managers and supervisors were similarly situated. *Russell*, 721 F. Supp. 2d at 813.

To determine whether members of the proposed class are similarly situated, the court must consider the following three factors: "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). The plaintiffs bear the burden of establishing that they are similarly situated. *See Camilotes*, 286 F.R.D. at 345. However, the plaintiffs need to show only that they are similarly situated, not identically situated. *See id.* at 346.

### 1. Factual and Employment Settings

The evidence elicited during discovery reveals significant differences in the duties performed by the plaintiffs. For instance, evidence of whether the plaintiffs set the schedules of other employees varied. Dan Boss and Colin Cleary both worked as warehouse managers, Boss at the Bedford Park warehouse and Cleary at the Wilmington warehouse. Both testified that their duties included setting the schedules of other employees. *See* Boss Deposition (attached as Ex. H to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 37:19-21, 58:15-59:20; Cleary Deposition, (attached as Ex. I to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 52:14-16. In contrast, opt-in plaintiff Mark Hawkins testified that as a warehouse supervisor at the Capital Heights warehouse, his duties did not include setting other employees' schedules. *See* Hawkins Deposition (attached as Ex. J to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 53:10-15.

Even opt-in plaintiffs with the same job title had differing duties. For example, warehouse manager Boss testified that he supervised 2-3 others at the Bedford Park warehouse,

*see* Boss Deposition (attached as Ex. H to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 49:6-23), while named plaintiff Derrick Hundt contends that no more than 1 other person at a time worked under him at the Bolingbrook warehouse, *see* Pl. Addt'l Facts [Dkt. 267] ¶ 14.  Likewise, Boss testified that at the Bedford Park warehouse, he interviewed applicants, recommended whom to hire, and disciplined employees, *see* Boss Deposition (attached as Ex. H to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 54:8-22, 67:6-20, 69:7-23, while Jeffry Butler testified that as the warehouse manager at the Waldorf warehouse, he was not involved in the hiring process, *see* Butler Deposition (attached as Ex. M to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 28:15-19.  Similarly, Butler testified that when he worked at the Wisconsin warehouse, warehouse manager Ronald Allred trained him, but when Butler became warehouse manager of the Waldorf warehouse, he was never asked to train other employees.  *See id.* at 11:15-22, 90:12-15.

These differences are significant because the degree to which employees perform management-related duties is relevant to whether the employee falls under the executive or administrative exemptions of the FLSA.  The exemptions apply where the employee's duties include either the management of the employer, *see* 29 C.F.R. § 541.100(a) (executive exemption), or office or non-manual work directly related to the management or general business operations of the employer, *see* 29 C.F.R. § 541.200(a) (administrative exemption).  Under the relevant regulations, "management" include activities such as interviewing and selecting new employees, training employees, setting and adjusting their work schedules and pay, directing their work, and disciplining employees.  *See* 29 C.F.R. § 541.102.

These variations in the plaintiffs' job duties will require individualized inquiries into whether each plaintiff was exempt from the overtime pay requirements of the FLSA. The plaintiffs contend that individualized inquiries are unnecessary because they all performed manual labor which, according to the plaintiffs, precludes them from being exempt. However, "an employee's performance of nonexempt work does not preclude the exemption if the employer's primary duty remains management." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008). Although employees who spent at least 50% of their time performing exempt work will generally be considered exempt employees, an employee who performs mostly nonexempt work such as manual labor may nevertheless be considered exempt "if the other factors support such a conclusion." 29 C.F.R. § 541.700(b). Therefore, the plaintiffs' performance of manual labor does not preclude them from being exempt employees but, rather, is just one of several factors the court must take into account on an individualized basis.

In summary, evidence of variations in the plaintiffs' job duties will require individualized inquiries into whether each plaintiff was exempt, and therefore this factor favors decertification of this collective proceeding.

### 2. <u>Individualized Defenses</u>

The second factor the court considers in determining whether to grant a motion for decertification is "whether defendants' defenses could be applied across the board to plaintiffs' claims and potential plaintiffs' claims or whether many and perhaps disparate defenses could be raised." *Russell*, 721 F. Supp. 2d at 821 (internal quotation marks and citation omitted). Where the court must engage in individualized inquiries to determine the applicability of a defense, this

factor favors decertification.  *See Camilotes*, 286 F.R.D. at 352 (individualized defenses favor decertification).

The defendants have asserted the executive and administrative exemptions as defenses to the plaintiffs' FLSA claims.  Determining whether an employee falls under one of these exemptions normally "requires a thorough, fact-intensive analysis of the employee's employment duties and responsibilities."  *Schaefer-LaRose*, 679 F.3d at 572.  However, the plaintiffs contend that fact-intensive individualized inquiries are unnecessary for two reasons:  (1) none of the plaintiffs supervised two or more employees and, therefore, none of them falls under the executive exemption; and (2) the primary duty of all of the plaintiffs was manual labor and, therefore, none of them falls under the administrative exemption.  The plaintiffs argue that because the issues of supervision of others and manual labor are common to all of the plaintiffs, any variation in other job duties among the plaintiffs is irrelevant.

a.  <u>Supervision of Two or More Employees</u>

The plaintiffs contend that the executive exemption is inapplicable because none of them supervised two or more employees.  However, that contention is unsupported by the evidence.  Opt-in plaintiff Dan Boss testified that he supervised two persons the entire time he worked as a warehouse manager at the Bedford Park warehouse, and on occasion supervised a third employee.  *See* Boss Deposition (attached as Ex. H to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 48:24 - 49:23.  Opt-in plaintiff Mark Hawkins testified that when he was hired as warehouse supervisor at the Capital Heights he was told to supervise two other employees.  *See* Hawkins Deposition (attached as Ex. J to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 16:4-20, 26:16-24.  The plaintiffs respond that Hawkins cannot be

credited with supervising two employees at the Capital Heights warehouse because Hawkins testified that former opt-in plaintiff Greg Hooks also supervised those employees. But the plaintiffs' response only highlights the need for individualized determinations into the extent to which the opt-in plaintiffs supervised two or more other employees.

In contrast to the testimony of Boss and Hawkins, opt-in plaintiff Colin Cleary testified that only one person worked with him and only for a few months during his time as warehouse manager at the Wilmington warehouse. *See* Cleary Deposition (attached as Ex. I to Affidavit in Support of Motion for Decertification [Dkt. 264]) 26:13-23. Likewise, Jeffrey Butler directed the work of just one employee for about a month during his time as warehouse manager at the Waldorf warehouse. *See* Butler Deposition (attached as Ex. M to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 25:6-18, 28:23-24. These variations regarding the supervision of other employees require individualized determinations about the applicability of the affirmative defense based on the executive exemption, a factor that favors decertification. *See Camilotes*, 286 F.R.D. at 352.

### b. Performance of Manual Labor

Next, the plaintiffs contend that the administrative exemption is inapplicable because the defendants uniformly required them to perform primarily manual labor. In support, the plaintiffs rely on deposition testimony from Bryan Bramson, a former regional logistics manager for DirectSat, who testified that the "primary duty of the warehousemen was '[t]o supply equipment to the technicians to install at the customers' homes.'" Response [Dkt. 252] at 10. In addition, the plaintiffs rely on job descriptions for the position of warehouse manager and warehouse supervisor to support their contention that the jobs involved primarily manual labor rather than

management duties. Specifically, they refer to (1) a job posting for the position of warehouse manager in which DirectSat advertised it was looking for a "hands on" applicant who was "[p]roficient with various types of warehouse equipment, including forklifts, etc.," Warehouse Manager Job Announcement (attached as Ex. D to Response [Dkt. 252]) at 1; and (2) a job description for the position of warehouse supervisor which states that the "employee must regularly lift and/or move up to 10 pounds, frequently lift and/or move up to 25 pounds and occasionally lift and/or move up to 50 pounds," Warehouse Supervisor Job Description (attached as Ex. D to Response [Dkt. 252]) at 3.

As an initial matter, Bransom testified that the purpose of the warehouse, not the "warehousemen," was to supply equipment. *See* Bramson Deposition (attached as Ex. C to Response [Dkt. 252]) at 47:14-21. In any event, the mere fact that an employee was required to perform manual labor does not mean that the employee is nonexempt. As discussed earlier, even an employee who performs manual labor may be considered exempt if his primary duty is management. *See Morgan*, 551 F.3d at 1259 ("[A]n employee's performance of nonexempt work does not preclude the exemption if the employer's primary duty remains management."). Although the job descriptions state that warehouse managers and supervisors are required to perform manual labor such as lifting or operating machinery, they also describe managerial responsibilities. For instance, warehouse managers were expected to "[m]anage full time and temporary warehouse staff," "[m]anage receiving and stocking of products," "[m]anage precise picking and sign out of products on a accurately and timely basis." Warehouse Manager Job Announcement (attached as Ex. D to Response [Dkt. 252]) at 1. Meanwhile, warehouse supervisors were expected to "manag[e] cycle counts and daily stock reports," "[o]versee[]

receiving and stocking of products . . .," "oversee[] the filling of requisitions, work orders, or requests for materials, tools, or other stock items . . .," and to "maintain[] inventory records." Warehouse Supervisor Job Description (attached as Ex. D. to Response [Dkt. 252]) at 2.

In addition, some of the opt-in plaintiffs have described job duties that include management responsibilities. For instance, Boss and Hawkins both testified that they supervised at least two other employees. *See* Boss Deposition (attached as Ex. H to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 48:24 - 49:23; Hawkins Deposition (attached as Ex. J to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 16:4-20, 26:16-24. In addition, Boss and Cleary both testified that they set the schedules of other employees. *See* Boss Deposition (attached as Ex. H to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 37:19-21, 58:15 - 59:20; Cleary Deposition (attached as Ex. I to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 52:14-16. Boss also testified that his duties included interviewing applicants, recommending whom to hire, and disciplining employees. *See* Boss Deposition (attached as Ex. H to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 54:8-22, 67:6-20, 69:7-23. Supervising other employees, setting their schedules, and being involved in the hiring and disciplining of employees are all duties relevant to whether an employee engages in management duties and, in turn, whether the employee falls under the executive or administrative exemption. *See* 29 C.F.R. § 541.102 ("management" include activities such as interviewing and selecting new employees, training employees, setting and adjusting their work schedules and pay, directing their work, and disciplining employees).

When employees perform both management-related duties as well as nonexempt duties, the court must discern the employee's primary duty in order to determine whether the employer

properly classified the employee as exempt.  *See Knott*, 897 F. Supp. 2d at 1240 (granting

motion for decertification because "[w]hile Dollar Tree applied its executive exemption across-

the-board, the defense is individualized in this case as Plaintiffs' job duties and employment

experiences vary dramatically.").  The evidence presented in this case shows that the plaintiffs'

duties varied based on their location.  Thus the plaintiffs cannot point to a uniform practice or

policy to establish that they are similarly-situated with regard to their primary duty.  Rather,

determinations about each plaintiff's primary duty must be undertaken individually in order to

evaluate "relative importance of the exempt duties as compared with other types of duties," "the

amount of time spent performing exempt work," and "the employee's relative freedom from

direct supervision."  29 C.F.R. § 541.700(a); *see also Smith v. Heartland Auto. Srvs., Inc.*, 404 F.

Supp. 2d 1144, 1153-54 (D. Minn. 2005) ("while the Court recognizes that Plaintiffs have made

a showing of similarity with respect to some aspects of their positions as Store Managers, given

the fact intensive nature of the exemption analysis, Plaintiffs have not satisfied the Court that

they are similarly situated to the extent necessary to make collective treatment of their claims

proper and efficient").

    Because the performance of manual labor must be evaluated in light of the plaintiffs'

performance of management-related duties, and because the degree to which the plaintiffs

performed management-related duties was not uniform, the court must engage in individualized

determinations.  This weighs against allowing the case to continue as a collective proceeding.

    **3.**    **Fairness and Procedural Concerns**

    The third and final factor requires the court to "consider[] whether proceeding as a

collective would create fairness or procedural benefits."  *Strait v. Belcan Eng'g Grp., Inc.*, No.

11 C 01306, 2012 WL 5988877, at *16 (N.D. Ill. Nov. 29, 2012). The need to address individualized factual issues weighs in favor of decertification. *Id.* Because the plaintiffs have not shown that they are similarly situated, the interests of judicial economy would not be served by allowing their claims to proceed collectively. *See Camilotes*, 286 F.R.D. at 353 (where a case presents a "myriad of individualized factual issues," the "[p]laintiffs' desire to litigate collectively for economic reasons . . . does not override the negative effects that certification is very likely to have on the fairness and manageability of the proceedings."). Accordingly, this factor also favors decertification.

The plaintiffs argue that even if the existing class of plaintiffs cannot proceed collectively, the court should craft subclasses of similarly situated plaintiffs that could proceed collectively. *See Alvarez v. City of Chi.*, 605 F.3d 445, 450 (7th Cir. 2010) ("[T]he district court must consider whether these other mechanisms for judicial resolution of their claims are more or less efficient than a collective action comprised of various subclaims"). However, the plaintiffs have not identified for the court any specific subclasses or in any other way proposed a litigation plan that would address the shortcomings of the existing class. To proceed with subclasses, the plaintiffs must first propose subclasses and explain how the subclasses will serve the fairness and procedural concerns of proceeding collectively. *See Camilotes*, 286 F.R.D. at 354 ("Generically stating that unspecified mechanisms may exist is not sufficient to allay the Court's manageability and fairness concerns, especially given the plethora of individualized factual issues in this case."). Because the plaintiffs have failed to propose subclasses or any other litigation plan, the court will not address the issue further.

In summary, the plaintiffs have failed to show that they are similarly situated, and they have therefore failed to show that this case should continue as a collective proceeding. Accordingly, the defendants' motion to decertify the class is granted. The case shall proceed as an individual claim brought by named plaintiff Darrick Hundt against the defendants. *See Alvarez*, 605 F.3d at 450 ("When a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs.").

**B.      Defendants' Motion for Summary Judgment on FLSA Claim (Count I) [258-1]**

The court now turns to the defendants' motion for partial summary judgment on Count I of the Amended Complaint, in which Hundt alleges that the defendants failed to pay him the overtime rate in violation of the FLSA. Because the case is proceeding as an individual claim by Hundt, the court shall review only those facts relevant to Hundt's individual claim. The following facts are agreed except where noted.

**1.      Facts**

Hundt began working for DirectSat on December 3, 2006, as a technician supervisor. Defs.' Facts [Dkt. 260] ¶ 10. Beginning on June 11, 2007, he worked as the warehouse manager for the Bolingbrook, Illinois warehouse until his termination on January 26, 2008. *Id.* Hundt was "responsible for everything" at the Bolingbrook warehouse and considered himself "pretty much" the boss. *Id.* ¶¶ 34, 36. His responsibilities included inventorying all of the equipment stored at the warehouse, and reconciling the inventory distributed to and used by technicians with the work orders received from DirecTV. *Id.* ¶ 35. Before distributing equipment to technicians, Hundt would complete order sheets identifying what he thought technicians needed

to complete installations at customers' homes.  *Id.* ¶ 40.  In doing so, Hundt exercised discretion when determining the equipment technicians needed.  *Id.* ¶ 39.

As warehouse manager, Hundt directed the work of warehouse assistant Ryan Olin for about three months.  Pl.'s Addt'l Facts [Dkt. 267] ¶ 14.  Technician Kyle Davenport and Melvyn Jessup, whose title is not given, also worked at the warehouse, but the defendants have identified no evidence that Hundt directed the work of Davenport or Jessup, or even that Jessup even worked at the warehouse during Hundt's time there.  Defs.' Resp. to Pl.'s Addt'l Facts [Dkt. 278] ¶ 14 (citing Defs.' Resp. to Pl.'s Facts [Dkt. 286] ¶ 57).

During his time as warehouse manager, DirectSat treated Hundt as an exempt employee and he did not earn overtime pay for time worked beyond 40 hours a week.  Defs.' Facts [Dkt. 260] ¶ 53.  Hundt always worked more than 40 hours a week.  *Id.* ¶ 56.  As warehouse manager, Hundt earned at least $455 per week.  *Id.* ¶ 54.

### 2.   Standard of Review

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).  "Statements of 'beliefs' or 'opinions' are insufficient to create a genuine issue of material fact."  *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994).  The court construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate when the nonmoving party is unable to establish the existence of an essential element of its case on which it will bear the burden of proof at trial.  *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). Speculation or a mere scintilla of

evidence will not suffice to defeat summary judgment. *Roger Whitmore Auto. Servs. v. Lake Cnty.*, 424 F.3d 659, 669 (7th Cir. 2005).

3.    **Analysis**

As detailed above in connection with the motion for decertification, the FLSA normally requires an employer to pay employees the overtime rate of one-and-a-half times the normal rate of pay for all hours worked in excess of 40 hours a week. *See* 29 U.S.C. §§ 207, 213. However, the FLSA contains exemptions, including for "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The burden falls on the employer to establish that an exemption applies. *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 574 (7th Cir. 2012). As detailed earlier, the executive exemption applies to employees who earn $455 per week, whose primary duty is management, who direct the work of two or more other employees, and who have the authority to hire or fire other employees or who may make recommendations on hiring, firing, or disciplining. 29 C.F.R. § 541.100(a). The administrative exemption applies to employees who earn at least $455 per week, who perform primarily office or non-manual work related to management, and who exercise discretion and independent judgment. 29 C.F.R. § 541.200(a). In addition, "[e]mployees who perform a combination of duties as set forth in the regulations in this part for executive [and] administrative" employees may be exempt under a combination exemption. 29 C.F.R. § 541.708.

According to the defendants, the undisputed evidence establishes that Hundt fell under the executive, administrative, and combination exemptions. Therefore, they contend, he was not entitled to overtime pay, and they are entitled to judgment in their favor on his claim under the FLSA. Hundt responds that the defendants' motion for summary judgment should be denied

because: (1) there is no evidence that he customarily and regularly directed the work of at least two other employees, and therefore he did not fall under the executive exemption; (2) there is no evidence that (a) his primary duty was the performance of office or non-manual work directly related to the management of general business operations of DirectSat or (b) he exercised discretion and independent judgment, and therefore he did not fall under the administrative exemption; and (3) because he performed no executive or administrative duties, he is not exempt under the combination exemption.

### a. <u>Executive Exemption</u>

Hundt argues that the defendants were not entitled to deny him overtime pay under the executive exemption because he did not direct the work of at least two other persons. The defendants respond with evidence they contend establishes that Hundt customarily and regularly directed the work of three other persons at the Bolingbrook warehouse, namely warehouse assistant Ryan Olin, technician Kyle Davenport and Melvyn Jessup. Hundt concedes that he directed the work of Olin from November 11, 2007, through January 25, 2008. Pl.'s Addt'l Facts [Dkt. 267] ¶ 14. But the evidence regarding Kyle Davenport establishes only that Davenport was a technician temporarily assigned to the warehouse following an injury that left him unable to work in the field. Defs.' Resp. to Pl.'s Addt'l Facts [Dkt. 278] ¶ 14 (citing Hundt's Deposition at 20:9-19). The defendants have not identified evidence that Hundt directed the work of Davenport during this time. As for Melvyn Jessup, the defendants' evidence establishes only that Jessup was transferred to the Bolingbrook warehouse at some unspecified time. *Id.* (citing Boss Deposition at 49:12-17). It does not establish that Hundt directed the work of Jessup or even that they worked at the warehouse at the same time.

The defendants contend that Hundt also supervised the many technicians who worked in the field and picked up the equipment and materials they needed from the Bolingbrook warehouse. In support, they rely on Hundt's deposition in which he testified that his duties included looking at "a report that would tell me the usage of what we—you know, the technicians used," assembling the equipment "on a skid," and then distributing the equipment. Defs.' Resp. to Pl. Facts [Dkt. 278] ¶ 6. Hundt also testified that he ensured that technicians' trucks received regular maintenance. *Id.* However, the cited testimony establishes only that Hundt managed the equipment technicians used, not the technicians themselves. In fact, Hundt testified that he did not supervise the technicians:

> Q: What other responsibilities did you have regarding the technicians as the warehouse manager?
>
> A: None, other than their inventory and their trucks. Maintenance on their trucks I oversaw.

*Id.* (citing Hundt Deposition 39:14-19).

The evidence of Hundt's interactions with technicians is similar to the evidence presented in *Pressler v. FTS USA, LLC*, No. 09 CV 676, 2010 WL 5105135 (E.D. Ark. Dec. 9, 2010), where the plaintiff worked as a warehouse manager for FTS USA, which like DirectSat is owned by Unitek USA. FTS USA argued that the plaintiff fell under the executive exemption because he supervised two or more technicians. However, the evidence showed only that the plaintiff distributed equipment to the technicians: "As a warehouse manager, Pressler's primary duties were about management—he managed equipment, not other employees. The technicians did report to Pressler, but only so Pressler could 'reconcile' their equipment." *Id.* at *2. Accordingly, FTS could not establish that the plaintiff was an exempt employee.

To establish that Hundt fell under the executive exemption from overtime pay, the defendants must satisfy all four conditions set out at 29 C.F.R. § 541.100(a), including showing that Hundt customarily and regularly directed the work of at least two other employees. The defendants have failed to do so, and have therefore not shown that Hundt fell under the executive exemption.

### b. <u>Administrative Exemption</u>

Next, the plaintiffs argue that the defendants were not entitled to deny him overtime pay under the administrative exemption because (1) he performed mostly manual labor rather than office or non-manual work directly related to the management of general business operations of DirectSat, and (2) he did not exercise discretion and independent judgment.

### I. **Work Related to Management or General Business Operations**

To qualify for the administrative exemption, an employer must show that the employee's primary duty was the performance of office or non-manual work directly related to the management or general business operations of the employer . . ." 29 C.F.R. § 541.200(a)(2). The employee's work must be "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201.

Work does not fall under the administrative exemption where the "employee is engaged in the core function of a business." *Eli Lilly*, 679 F.3d at 574. Rather, exempt administrative work consists of "'employment activity ancillary to an employer's principal production activity.'" *Id.* (quoting *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1072 (7th Cir. 1997) (internal quotation marks and citation omitted)). It includes work performed by "a wide variety

of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." *Id.* (quoting 69 Fed. Reg. at 22,138). As an example, "the regulations distinguish between the type of work that involves 'the running or servicing of the business," and work such as laboring "on a manufacturing production line or selling a product in a retail or service establishment.'" *Eli Lilly*, 679 F.3d at 574 (citing 29 C.F.R. § 541.201(a)).

Hundt offers two arguments why his work as a warehouse manager did not fall under the administrative exemption. First, he contends that his work managing the inventory and distribution of equipment was DirectSat's principal production activity and so he was directly involved in DirectSat's core business rather than in an activity ancillary to the core business. However, it is undisputed that DirectSat's core business was providing fulfillment services to DirecTV. Defs.' Facts [Dkt. 260] ¶ 2. DirectSat fulfilled services to DirecTV by installing DirecTV equipment in customers' homes. Deposition of Elizabeth Downey (attached as Ex. C to Affidavit in Support of Motion for Decertification [Dkt. 264]) at 69:1-5 ("[T]he business of DirectSat is installing the DirecTV product."). Hundt attempts to dispute that assertion with evidence that the "primary function of the *warehouses* was to receive equipment from DirecTV and distribute that equipment to Defendants' technicians for installation and service at DirecTV customer locations." Response [266-1] at 10 (emphasis added). But Hundt's evidence focuses on the core function of the *warehouse*, not DirectSat overall. Therefore, he has not disputed that the core function of DirectSat overall was the installation of DirecTV equipment, and that his work receiving and storing equipment was an ancillary activity.

Second, Hundt argues that his primary duty was not office or non-manual work because the undisputed evidence shows that he performed manual labor such as operating forklifts, unloading trucks, and moving equipment, and for that additional reason he did not fall under the administrative exemption. As discussed above, the mere fact that an employee performed manual labor does not rule out the applicability of the administrative exemption. Rather, the exemption applies if the employee's "primary duty" was the performance of office or non-manual labor related to the management of the employer. 29 C.F.R. § 541.200(a)(2). Determining an employee's primary duty "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). When determining whether the nonexempt work an employee performed was his primary duty, the court must compare the importance and time spent on the exempt and nonexempt duties. *Id*.

The evidence establishes that the character of Hundt's job as a whole was management of the warehouse. According to Hundt's own testimony, as warehouse manager he was responsible for everything at the Bolingbrook warehouse and considered himself to be the boss. Defs.' Facts [Dkt. 260] ¶¶ 34, 36. He also testified that he maintained inventory records and used discretion when allotting the inventory, handled technicians' complaints, and ensured that DirectSat's vehicles were regularly serviced. *Id.* ¶¶ 35, 39, 40, 48. Hundt's own testimony establishes that he was in charge of the warehouse, and the primary duty of a person in charge of a facility is customarily management. *See Murray v. Stuckey's Inc.*, 939 F.2d 614, 618 (8th Cir. 1991) ("'[T]he person 'in charge' of a store has management as his primary duty, even though he spends the majority of his time on non-exempt work and makes few significant decisions.'")

(quoting *Donovan v. Burger King Corp.*, 672 F.2d 221, 227 (1st Cir.1982)); *Strickler v. E. Off Road Equip., Inc.*, 935 F. Supp. 650, 658 (D. Md. 1996) (the primary duty of the highest ranking employee at a facility responsible for all duties associated with running the facility is management).

Although the parties have not quantified the overall time Hundt spent on nonexempt, manual labor compared to his office or non-manual labor, Hundt testified that he spent at least one-third and as much as three-quarters of his time performing non-manual duties such as tracking and managing inventory on the computer. Defs.' Facts ¶ 47. In any event, even where precise quantities of time cannot be discerned from the record, "[i]f a worker's most important duties are administrative, if the worker exercises discretion and independent judgment frequently, and if the worker is relatively free from direct supervision, quantifying the time spent performing administrative duties is not required." *Strickler*, 935 F. Supp. at 658; *see also Donovan*, 672 F.2d at 226 ("an employee can manage while performing other work, and that this other work does not negate the conclusion that his primary duty is management.").

Based on the undisputed facts presented, Hundt's duties bear a stronger resemblance to work performed "running or servicing" the business as opposed to "laboring 'on a manufacturing production line or selling a product in a retail or service establishment.'" *Eli Lilly*, 679 F.3d at 574 (citing 29 C.F.R. § 541.201(a)). Accordingly, the evidence establishes that Hundt's primary duty directly related to the management or general business operations of DirectSat.

### ii.    Discretion and Independent Judgment

Next, Hundt contends that the defendants cannot establish that he exercised discretion or independent judgment, and therefore he cannot qualify under the administrative exemption.

However as noted earlier, Hundt does not dispute that he exercised discretion in allocating equipment to technicians. Defs.' Facts [Dkt. 260] ¶ 39. Moreover, Hundt's deposition testimony establishes that he did so. Hundt testified that he would take steps to make sure technicians were not hoarding equipment, and that he would change a technician's allotment if he discovered that the technician had accumulated too much equipment:

> A: So before they got their merchandise, I would go out there and say, "Yeah, they have two receivers of this or that." So I can tell. If someone was hoarding ten and only put down two, I would obviously see that and address that at the time.
>
> Q: How would you address it?
>
> A: I would typically change whatever I'm giving them to make it, you know, come out—if they had ten, they wanted two, and say they needed twenty as an average, I would take eight off and make it so they only had twenty. So put it back into the warehouse stock, typically, and then, you know, I would comment and say, "Look it. This is why we need accurate counts on that."
>
> . . .
>
> Q: Did the techs ever complain that you weren't giving them enough equipment or anything like that?
>
> A: All the time.
>
> Q: And how did that process work?
>
> A: Again, I only had so many on hand, and it was typically receivers is what they were complaining about. But I would only have so many on hand, and, you know, they think they need twenty when they show that they only used six in a week, and I would only give them six or seven, you know, whatever they had on the truck to make it their six or seven, what their average was.
>
> . . .

| Q: | So you had the discretion to manage the inventory as best as you saw fit— |
|---|---|
| A: | Yeah. |

Hundt Deposition (attached as Ex. G to Affidavit in Support of Motion for Decertification [Dkt. 264]) 41:7-22, 86:18 - 87:7, 87:15-17.

Because the evidence establishes that Hundt's primary duty was managerial, and because his own testimony establishes that he exercised discretion, his arguments that the defendants have failed to show that he fell under the administrative exemption are unavailing.

### c.    <u>Combination Exemption</u>

The defendants contend that Hundt was also an exempt employee under the hybrid, or combination, exemption.  "Employees who perform a combination of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees may qualify for exemption."  29 C.F.R. § 541.708.  "The combination exemption addresses the situation in which an 'employee perform[s] duties that fall under more than one individual exemption, none of which separately represents her primary duty. . . .  In other words, the combination exemption provides a mechanism for cobbling together different exempt duties for purposes of meeting the primary-duty test.'"  *Schmidt v. Eagle Waste & Recycling Inc.*, 598 F. Supp. 2d 928, 937 (W.D. Wisc. 2009) (quoting *IntraComm, Inc. v. S. Bajaj*, 492 F.3d 285, 294 (4th Cir. 2007)).

The combination exemption is inapplicable to Hundt.  To begin, the combination exemption applies only when the employee's work under any one exemption does not constitute his primary duty.  The court has already determined that Hundt's primary duty consisted of his managerial work under the administrative exemption.  However, even if his administrative work

was not his primary duty, the combination exemption would still be inapplicable because Hundt performed no executive work. As discussed above, there was no evidence that Hundt supervised two or more employees so he performed no executive work that could have combined with his administrative work to qualify for an exemption. As a result, the defendants' argument that Hundt was also an exempt employee under the combination exemption is unavailing.

Accordingly, the undisputed evidence establishes that Hundt was an exempt employee under the administrative exemption. Therefore, the defendants' motion for summary judgment on Hundt's FLSA claim is granted and judgment is entered in their favor on Count I of his Amended Complaint.

**C.     Plaintiffs' Motion for Summary Judgment on FLSA Claim (Count I)  [Dkt. 255]**

In his motion for summary judgment, Hundt raises the same arguments he presents in opposition to the defendants' motion. Specifically, he argues that he was not an exempt employee under (1) the executive exemption because there is no evidence he supervised two or more employees, or (2) the administrative exemption because the evidence establishes he performed primarily manual labor. For the reasons the court granted the defendants' motion for judgment on Count I, it denies Hundt's motion for judgment on that same count.

### III. CONCLUSION

For the reasons given, (1) the defendants' motion for decertification [Dkt. 240] is granted, and this case therefore consists of Hundt's individual claims against the defendants; (2) the defendants' motion for summary judgment [Dkt. 258] is granted and judgment is entered in the defendants' favor on Count I; and (3) Hundt's motion for summary judgment on Count I [Dkt. 255] is denied. The parties are directed to file position papers not to exceed 5 pages

addressing whether Hundt's Illinois Minimum Wage Act claim in Count II is viable in light of the grant of summary judgment on his FLSA claim. *See* 820 Ill. Comp. Stat. 105/4a(2)(E) (an employee who is exempt under the administrative or executive exemptions of the FLSA is also exempt under the IMWA); *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 375-76 (7th Cir. 2005) ("Since the plaintiffs' FLSA claims fail, their related state law claims under the IMWA must fail as well."). The position papers shall be filed 21 days from the entry of this order.

ENTER:

_____/s/_____
Joan B. Gottschall
United States District Judge

Dated: July 1, 2013