# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DARRICK HUNDT, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 08 CV 7238<br>)<br>) Judge Joan B. Gottschall |
| DIRECTSAT USA, LLC, et al., | )<br>) |
| Defendants. | ) |

## MEMORDANDUM OPINION AND ORDER

Plaintiff Darrick Hundt sued his employer, DirectSat USA, LLC; its corporate parent, UniTek USA, LLC; and three corporate officers, Elizabeth Downey, Cathy Lawley, and Dan Yannantuono, alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and the Illinois Minimum Wage Act (IMWA), 815 Ill. Comp. Stat. 5/2-209. The court granted conditional collective-action certification and allowed Hundt to bring his FLSA claim on behalf of the eighteen similarly-situated employees who opted to join the collective action under 29 U.S.C. § 216(b). Defendants then moved to decertify the FLSA class and for summary judgment on the FLSA claim. The court granted both motions on July 1, 2013, leaving only Hundt's IMWA claim pending before the court. On September 4, 2013, the court entered summary judgment in favor of defendants on that claim as well.

Defendants now move for attorneys' fees pursuant to the bad-faith exception to the American Rule, Rule 11 of the Federal Rules of Civil Procedure, and 28 U.S.C. § 1927. For the reasons stated below, the motion is denied.

# I. BACKGROUND

Plaintiff Darrick Hundt filed this action on behalf of himself and others similarly situated arguing that defendants misclassified them as "exempt" and violated the FLSA by failing to pay them overtime. Plaintiff's counsel is also counsel of record in an earlier-filed case, *Farmer v. DirectSat USA, LLC*, No. 08 C 3962 (N.D. Ill. filed July 11, 2008). During discovery in *Farmer*, plaintiff's counsel deposed Hundt as a non-party witness. DirectSat alleges that at the deposition, plaintiff's counsel actively solicited Hundt and informed him that he might have a claim against DirectSat. About two weeks later, Hundt filed the instant lawsuit. On March 18, 2010, DirectSat filed a motion for sanctions against plaintiff's counsel before the *Farmer* court, alleging that counsel had violated that court's express order forbidding them from making use of discovery for another purpose. The *Farmer* court granted the motion and fined plaintiff's counsel $5,000.

Like much litigation, this case continued with disagreements requiring court intervention including motions to compel on both sides. On February 26, 2009, on consent of the parties, the court entered an order requiring defendants to produce the class list "for all warehouse managers employed by the Defendant within the past three years" and allowing plaintiff to mail the approved notice to those individuals. (Agreed Order 1, ECF No. 28.) Against defendants' objections, on May 17, 2010, the court granted plaintiff's motion to file an amended complaint "to (i) add UniTek, Yannantuono, Downey, and Lawley as defendants, and (ii) expand the putative class of plaintiffs to include 'warehouse supervisors and other similarly-titled positions.'" (Order 18-19, ECF No. 102.) Following disputes over who was included within the above-defined class and plaintiff's motion to provide notice to additional individuals, the court ordered defendants to provide notice to five people who defendants admittedly failed to notify and to provide a list "of all warehouse supervisors, general managers, field supervisors, and other

warehouse employees classified as exempt from overtime pay." (Order, May 24, 2010, at 8-9, ECF No. 104.) Following the second round of putative class-member notifications, approximately 60 additional plaintiffs joined the collective action. Plaintiff's counsel filed a motion to voluntarily dismiss 48 of the new plaintiffs stating that their claims "were not similar enough to the warehouse managers' claims to be suitable for adjudication in this collective action." (Pl.'s Mot. to Dismiss Opt-in Pls. 2, ECF No. 165.) Both parties then filed cross-motions for summary judgment, and defendants moved to decertify the class. On July 1, 2013, the court granted defendants' motion to decertify the class and their motion for summary judgment on Hundt's FLSA claim. Defendants now seek the $447,195 in fees they incurred during this litigation.

## II. LEGAL STANDARD

### A. Bad-Faith Exception to American Rule

The prevailing American rule is that both parties in federal litigation must pay their own attorneys' fees, absent statutory obligation or contractual agreement between the parties. *Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th Cir. 1994) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 263-64 (1975)). "[A]n exception allows federal courts to exercise their inherent power to assess such fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991).

### B. Rule 11 Sanctions

Rule 11 of the Federal Rules of Civil Procedure provides that by presenting a pleading to the court, an attorney is representing that the pleading "is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of

3

litigation; . . . [and] the factual contentions have evidentiary support, or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(1), (3). If a party violates Rule 11 by "making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose," the court may impose an appropriate sanction after notice and a reasonable opportunity to respond. *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998). A frivolous claim is "one that is 'baseless and made without a reasonable and competent inquiry.'" *Id.* (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc)). Rule 11 is not a fee-shifting statute; it is a "law imposing sanctions if counsel files with improper motives or inadequate investigation." *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989) (en banc).

## C. 28 U.S.C. § 1927

Section 1927 of Title 28 of the United States Code provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

## III. ANALYSIS

## A. Bad-Faith Exception to American Rule

Defendants argue that they are entitled to attorneys' fees pursuant to the bad-faith exception to the American Rule because "Plaintiff's Counsel engaged in bad faith conduct in filing and litigating this action in the face of admitted variation and stark differences among the Plaintiffs . . . ." (Defs.' Br. 16, ECF No. 316). While defendants correctly assert that a prevailing

4

defendant in an FLSA case can recover attorneys' fees if the case was litigated in bad faith, *EEOC v. O&G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 883 (7th Cir. 1994), the bad-faith exception is a "high barrier to an award of fees." *See Mach v. Cnty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009) (internal quotation marks omitted). "Courts have used phrases such as harassment, unnecessary delay, needless increase in the cost of litigation, willful disobedience, and recklessly making a frivolous claim" to define bad faith. *Id.* at 501. "Mere negligence does not satisfy the bad faith requirement . . . ." *D'Angelo v. J & F Steel Corp.*, No. 01 C 6642, 2003 WL 22220179, at *1 (N.D. Ill. Sept. 24, 2003) (citing *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1185 (7th Cir. 1992)).

Defendants claim that the case was meritless at its inception or, in the alternative, that it became so after depositions revealed significant differences among the plaintiffs. They assert that the case was "birthed from attorney misconduct" in the *Farmer* case (Defs.' Br. 15) and that plaintiff's counsel needlessly expanded the litigation by amending the complaint to add defendants and additional collective-action members. They point to the following as proof of the frivolous nature of the case: (1) plaintiff voluntarily dismissed approximately two-thirds of the opt-in class members; (2) the court ultimately decertified the class; and (3) the court granted summary judgment in favor of defendants on Hundt's claims.

First, the fact that this case may have been "birthed from attorney misconduct" in the *Farmer* case is not a proper basis for awarding sanctions. Plaintiff's counsel has already been sanctioned by the *Farmer* court for the misconduct in that case, and this court has previously stated that it will not punish plaintiff's counsel a second time for "conduct for which Plaintiff's counsel has already been sanctioned by the *Farmer* court." (Order, July 6, 2011, at 5, ECF No.

5

176.) Defendants did not seek sanctions from this court when the complaint was filed, and now is not the time to rehash arguments over misconduct that occurred more than five years ago.

Nor is the court persuaded that it should award sanctions because plaintiff's counsel voluntarily dismissed two-thirds of the opt-in class members. As the Seventh Circuit recognized in *Mach*, "abandoning unprovable claims generally indicates the *absence* of bad faith." 580 F.3d at 501. Voluntary dismissal shows counsel's responsible decision to dispose of unsupportable claims, not sanctionable misconduct.

That leaves the court's decision to grant defendants' motions for decertification and summary judgment. Defendants argue that the court's decision shows that plaintiffs' claims were frivolous. The court disagrees. To determine whether to decertify the collective action, the court looked to whether there was a "factual nexus that [bound] the plaintiffs together as victims of a particular violation of the overtime laws generally." *Hundt v. DirectSat USA, LLC*, 294 F.R.D. 101, 104 (N.D. Ill. 2013) (internal quotation marks omitted). The court analyzed three factors: (1) whether the plaintiffs shared similar employment settings; (2) whether the various affirmative defenses available to defendants applied individually to each plaintiff; and (3) fairness and procedural concerns. *Id.*

With respect to the first factor, the court found that the plaintiffs did not share similar employment settings because two plaintiffs testified that their duties included setting the schedules of other employees, while one plaintiff testified that his duties did not include setting other employees' schedules. *See id.* at 104-05. The court concluded that the "variations in the plaintiffs' job duties required individualized inquiries into whether each plaintiff was exempt from the overtime pay requirements of the FLSA." *Id.* at 105.

With respect to the second factor, the court examined whether defendants' affirmative defenses could be applied across the board to plaintiffs' claims or needed to be analyzed on an individual basis. *Id.* Defendants asserted the executive and administrative exemptions as defenses to plaintiffs' claims. *Id.* The court recognized that whether the plaintiffs fell under the administrative exemption turned on whether they supervised two or more employees and noted that the plaintiffs' deposition testimony differed in this regard. *Id.* at 106-07. As to the executive exemption, the court found that plaintiffs submitted insufficient evidence to conclude that defendants "uniformly required them to perform primarily manual labor." *Id.*

With respect to the third factor, the court found that "[b]ecause the plaintiffs have not shown that they are similarly situated, the interests of judicial economy would not be served by allowing their claims to proceed collectively." *Id.* at 108.

As the court's opinion demonstrates, the question of whether to decertify the class was one of degree—it asked whether plaintiffs had introduced *sufficient* evidence of similarity. To answer that question, the court looked to the entire record and engaged in a fact-intensive inquiry. Although the court ultimately found plaintiffs' arguments unconvincing, their arguments were no more frivolous than arguments in any other case in which class certification is denied.

The question on summary judgment was similarly fact-intensive. Defendants argued that summary judgment was warranted because Hundt fell under the executive, administrative, and combination exemptions. *Id.* at 109. The court disagreed with defendants with respect to the executive and combination exemptions, but granted summary judgment because it found that Hundt fell under the administrative exemption. *Id.* at 110-113. Hundt argued that he did not fall under the administrative exemption because he performed mostly manual labor rather than work related to management or general business operations. *See id.* at 110. The court acknowledged

7

that Hundt performed some manual labor, but concluded that "[t]he evidence establishe[d] that the character of Hundt's job as a whole was management of the warehouse." *Id.* at 111-12 ("Hundt's duties bear a stronger resemblance to work performed running or servicing the business as opposed to laboring on a manufacturing production line or selling a product in a retail or service establishment." (internal quotation marks omitted).) Answering this question involved considering the totality of the evidence and deciding to which kind of employee Hundt's job duties "b[ore] a stronger resemblance." That the court disagreed with Hundt in this regard does not show that his claim was frivolous.

Finally, defendants argue that plaintiff's counsel acted in bad faith by "with[holding] critical evidence in an attempt to ambush Defendants at summary judgment." (Defs.' Br. 16.) Defendants note that they filed two motions to compel and that plaintiff's summary-judgment motion included post-discovery declarations. But as plaintiff points out, the court granted several motions to compel against defendants as well, and plaintiff's counsel promptly corrected their mistake of including post-discovery declarations with their summary-judgment motion. The court finds that plaintiff's counsel's conduct in this regard does not rise to the level of "bad faith."

**B. Rule 11 Sanctions**

Defendants argue that Rule 11 sanctions are appropriate because plaintiff "asserted unfounded collective action allegations not well grounded in fact or law . . . [and] caused unnecessary delay in th[e] case and needlessly prolonged the litigation." (Defs.' Br. 24.) To support their contention, defendants cite *Retired Chicago Police Ass'n v. Firemen's Annuity and Benefit Fund of Chicago*, 145 F.3d 929 (7th Cir. 1998), and *Durr v. Intercounty Title Co. of Illinois*, 14 F.3d 1183 (7th Cir. 1994). In both of these cases, however, the court sanctioned

plaintiffs for failing to conduct any preliminary investigation to prove the existence of an injured class of similarly situated individuals. *See Retired Chi. Police Ass'n*, 145 F.3d at 934 (sustaining Rule 11 sanctions where plaintiff's counsel "did not conduct a factual inquiry . . . and filed claims that had no basis in fact"); *Durr*, 14 F.3d at 1188 (upholding Rule 11 sanctions where plaintiff's counsel sued "on behalf of a class of plaintiffs that did not exist").

Here, however, this court granted preliminary certification, noting that plaintiff provided evidence of a common plan or policy and similar duties among the putative class members. *See Hundt v. DirectSat USA, LLC*, No. 08 C 7238, 2010 WL 2079585, at *3-5 (N.D. Ill. May 24, 2010) (relying on e-mails, interrogatories, and other discovery in granting plaintiff's motion to send notice to additional members of the plaintiff class). The court finds that plaintiff's counsel conducted sufficient preliminary investigation before filing and amending their collective-action suit.

**C. 28 U.S.C. §1927**

Alternatively, defendants argue that plaintiff's counsel should be sanctioned under 28 U.S.C. § 1927 as they "needlessly, unreasonably, and vexatiously multiplied these proceedings by continuing to seek endless expansion of the putative collective action members, blocking Plaintiffs from discovery, withholding critical discovery . . . [and] refusing to withdraw groundless claims . . . ." (Defs.' Br. 26-27.) "Cases from our Court interpreting § 1927 show that before sanctions attach, a lawyer must act 'vexatiously and unreasonably' and in subjective or objective bad faith." *Fox Valley Constr. Workers Fringe Benefit Funds v. Pride of the Fox Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998). The arguments that defendants raise to support this argument are the same as those they raised under the bad-faith

9

exception and Rule 11. For the same reasons that the court declines to sanction plaintiff's counsel under those rules, the court declines to sanction plaintiff's counsel under § 1927.

## IV. Conclusion

For the reasons stated above, defendants' motion for attorney fees' and/or sanctions is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 15, 2014